

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 0 8 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DORIS J. MOORE,

        Plaintiff,

                                 NOT FOR PUBLICATION
-against-                         MEMORANDUM & ORDER
                                 08-CV-1736 (CBA)
MICHAEL J. ASTRUE, Commissioner of
Social Security

        Defendant.
-----------------------------------------------------------------x
AMON, Chief United States District Judge:

        Plaintiff Doris Moore, pro se, has petitioned for review of the Commissioner's denial of

Supplemental Security Income ("SSI") benefits. The Commissioner has moved for judgment on the

pleadings. For the reasons stated herein, the Commissioner's motion is granted.

I.      **BACKGROUND**

        Moore was born in 1955 and has a high school education. (Tr. 86, 96.) She lives with her

daughter. (Tr. 241.) From July 2002 until March 2005, she worked as a home health aide, which

involved assisting clients with cleaning, cooking, shopping, bathing, and attending doctor's

appointments. (Tr. 92-93.) On February 9, 2005, an 85-year-old client assaulted Moore with a

cane, and Moore sustained injuries to her neck and back. (Tr. 141, 222.) On March 13, 2005,

Moore left her job, claiming that these injuries made it too difficult for her to work. (Tr. 92.) The

next day, she went to the Brookdale University Hospital emergency room because "everything shut

down in [her] back." (Tr. 245.) She was diagnosed with muscle spasm and discharged with

instructions that she should be able to return to normal work duties within two days. (Tr. 122-24,

183.) Moore did not return to work, however, and received worker's compensation for her injuries.

(Tr. 238.)

Moore started seeing a chiropractor in March 2005, and began medical treatment with Dr. Dwiref Mehta in May 2005. (Tr. 141, 180.) Dr. Mehta diagnosed her with cervical and lumbar radiculopathy and mid-back sprain/strain, and began seeing her approximately once a month. (Tr. 129, 142.) In support of Moore's claim for worker's compensation, Dr. Mehta opined that she had a "temporary total disability." (Tr. 142-43.) In his initial evaluation, Dr. Mehta reported that Moore walked with a slight limp, experienced pain in her left toes and heel, and could not squat more than halfway. He also reported diminished ranges of motion in Moore's spine, hips, and knees; decreased sensation in the left lower extremity; and straight leg raising of 70/90 degrees on the right side and 60/90 degrees on the left. (Tr. 141-42.) Dr. Mehta prescribed liniments, over-the-counter pain medication, and Lidoderm patches. (Tr. 130.) He also referred Moore to physical therapy with Venerando LoMongo. (Tr. 126-27.) In September 2006, Dr. Mehta prescribed Vicodin. (Tr. 206.)

Moore filed an application for SSI benefits on August 31, 2005, alleging high blood pressure, back injury, and muscle spasm. (Tr. 91.) The application was denied on November 23, 2005. (Tr. 57.) Moore then filed a timely request for an administrative hearing, which was held on September 11, 2007. (Tr. 233-48.) Administrative Law Judge (ALJ) Lucian A. Vecchio considered the case de novo and, on October 17, 2007, found that Moore was not disabled within the meaning of the Social Security Act. (Tr. 12-20.) The Appeals Council denied the request for review of ALJ Vecchio's decision on February 22, 2008. (Tr. 4.) This action followed. On March 20, 2009, the Commissioner moved for judgment on the pleadings; however, he did not file the administrative record with this Court until August 16, 2011.

## II.    STANDARD OF REVIEW

The federal Supplemental Security Income program provides benefits to aged, blind, or disabled individuals who meet statutory income and resource criteria. 42 U.S.C. § 1381 et seq. SSI

benefits are not payable prior to the month following the filing of the application. 42 U.S.C. §

1382(c)(7); 20 C.F.R. §§ 416.335. The Commissioner must consider, however, the medical record

of at least the preceding twelve months, and any other earlier period necessary to the disability

determination. 20 C.F.R. § 416.912(d).

"In reviewing the Commissioner's denial of benefits, the courts are to uphold the decision

unless it is not supported by substantial evidence or is based on an error of law." Melville v. Apfel,

198 F.3d 45, 51-52 (2d Cir. 1999) (citing Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998);

Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). Substantial

evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting

Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In making this determination, the reviewing court is to defer to the ALJ's resolutions of

conflicting evidence. See Clark v. Comm'r of Social Security, 143 F.3d 115, 118 (2d Cir. 1998)

("In reviewing the denial of SSI benefits, we must determine whether the SSA's decision was

supported by substantial evidence and based on the proper legal standard, keeping in mind that it is

up to the agency, and not this court, to weigh the conflicting evidence in the record."). Additionally,

the reviewing court is not to engage in an independent analysis of the claim for benefits at issue. See

Melville, 198 F.3d at 52 ("It is not the function of the reviewing court to decide de novo whether a

claimant was disabled . . . or to answer in the first instance the inquiries posed by the five step

analysis set out in the SSA regulations.").

Under the Social Security Act, "an individual shall be considered to be disabled . . . if he is

unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. The Commissioner uses a five-step analysis to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920. The Commissioner first determines whether the claimant is working; if she is engaging in substantial gainful activity, the claim will be denied without consideration of any medical evidence. 20 C.F.R. § 416.920(a)(4)(i), 416.920(b). If the claimant is not working, the Commissioner determines whether the claimant has a severe impairment which significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment or combination of impairments that meets or equals one of the listings in Appendix 1 to 20 C.F.R. Part 404, Subpart P of the regulations; if so, the claimant will be found disabled with no further inquiry. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ("RFC") to perform her past work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(e)-(f), 416.960(b). To determine the claimant's RFC, the Commission must consider all the claimant's impairments, not just those deemed severe. 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p, 1996 WL 374184. If the claimant's RFC does not permit her to engage in her prior work, or if the claimant does not have any past relevant work, the fifth and final step requires the Commissioner to determine whether the claimant, in light of her RFC, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." Decker v. Harris, 647 F.2d 291, 298 (2d Cir. 1981); see 20 C.F.R. §§ 416.920(a) (4)(v), 416.920(g). If she cannot, benefits are awarded. Dixon v. Heckler, 785 F.2d 1102, 1103 (2d Cir. 1986). At the fifth step in the analysis, the burden falls on the commissioner to establish that there is gainful work in the national economy that the

4

claimant could perform. See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir.2004) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) and Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000)).  With these standards in mind, the Court will now address the instant claim for benefits.

## III.    DISCUSSION

For the reasons stated below, the Court finds that the ALJ's findings are supported by substantial evidence in the record, and that there is no error of law meriting a remand.  Accordingly, the defendant's motion for judgment on the pleadings is granted.

### A.    Steps One, Two, and Three of the ALJ's Disability Analysis

At Step One of the disability analysis, the ALJ correctly found that Moore had not engaged in substantial gainful activity since her application date, having left her job on March 13, 2005.  At Step Two, the ALJ determined that Moore suffered from a severe back impairment, in the form of disc bulges at L4/5 and C5/6.  This is supported by the MRIs of Moore's spine taken on April 7 and August 18, 2006.  (Tr. 177-79.)

At Step Three, the ALJ found that Moore's impairments did not meet any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations—in particular, that she did not meet listing 1.04, which reads:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> > or
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by

> severe burning or painful dysesthesia, resulting in the need for changes in
> position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by
> findings on appropriate medically acceptable imaging, manifested by chronic
> nonradicular pain and weakness, and resulting in inability to ambulate
> effectively, as defined in 1.00B2b.

The ALJ's findings are supported by the nerve conduction studies and EMG performed in

November 2006, which showed normal results (tr. 194), and the MRIs taken of Moore's lumbar and

cervical spine, which showed no evidence of spinal stenosis, fracture, disc herniation, or

involvement of the nerve root or spinal cord. (Tr. 177-79.) In addition, both Dr. Richard Wagman,

a medical expert who testified at Moore's hearing, and the state's consulting physician, Dr. Peter

Seitzman, stated that Moore did not meet or equal any of the listed impairments. (Tr. 175, 246.)

## B.    Step Four: Moore's Residual Functional Capacity

At Step Four, the ALJ concluded that Moore retained an RFC to perform light work, which

"involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

weighing up to 10 pounds," and "requires a good deal of walking or standing, or . . . involves sitting

most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

Substantial evidence of record supports the ALJ's RFC determination. Dr. Antonio De

Leon, who performed a consultative examination on October 28, 2005, found that Moore had

normal ranges of motion in all her joints and spine without any evidence of deformity, swelling or

tenderness. (Tr. 165.) Straight leg raising was 80 degrees bilaterally. (Id.) Moore was able to

bend to 80 degrees, and to tandem walk, heel walk, and toe walk. (Id.) She had a normal gait. (Id.)

Dr. De Leon reported normal motor, sensory and DTR findings, with no pathological reflexes. (Id.)

An x-ray of the lumbar spine was negative. (Id.) Dr. De Leon concluded that Moore was only

"mildly impaired in activities requiring sitting, standing, lifting, carrying and handling objects." (Id.)

The New York state consulting physician, Dr. Peter Seitzman, arrived at similar conclusions on November 8, 2005. (Tr. 175.) After reviewing Moore's treatment records, he noted that Moore exhibited only "mildly reduced ranges of motion of multiple sites" with "no significant neuro impairments." (Id.) He concluded that Moore could lift 50 pounds occasionally and 25 pounds frequently, and that she could walk, stand, or sit for 6-8 hours a day. (Id.)

Moreover, Moore's only hospitalization for her back pain, a month after the alleged injury, produced a diagnosis of muscle spasm (tr. 122-24), and her discharge summary stated that she "should be able to return to work [in] 2 days" and "perform usual duties" (tr. 183). While Moore's recovery may not have been as rapid as the hospital staff predicted, the physical therapy records over the next several months support a finding that Moore had experienced significant alleviation of her symptoms by the time she applied for SSI benefits.

Moore began therapy with Physical Therapist LoMongo on May 24, 2005. At the initial evaluation, LoMongo reported antalgic gait, as well as limited ranges of motion, muscle spasm, and tenderness in the cervical and lumbar regions. (Tr. 126.) He diagnosed cervicalgia and low back syndrome. (Tr. 126.) LoMongo began treating Moore twice a week, and by October 2005 he reported that Moore tolerated treatment well and was showing increased endurance. (Tr. 147.) His prognosis was "good to excellent." (Id.) In March 2006, LoMongo documented that Moore had no new complaints and was feeling better after treatment and home exercises. (Tr. 186.) He also stated that Moore had reported decreased pain and tenderness, and increased movement. (Tr. 186.) While there was still some muscle tightness and limitation in the lumbar range of motion, the cervical range of motion was normal. (Id.)

7

As noted above, the objective medical evidence also corroborates a finding that Moore could perform light work. Spinal MRIs revealed only two disc bulges, with no evidence of fracture, disc herniation, spinal canal compromise, stenosis, or foraminal extension. Disc space height was preserved, and normal vertebral and cervical cord alignment was maintained. (Tr. 177-79.) In addition, nerve conduction studies and an EMG produced normal results. (Tr. 194.) Finally, at the hearing before the ALJ, Dr. Richard Wagman testified that he had reviewed Moore's full medical record and concluded that it was "certainly . . . reasonable" for her to perform light work. (Tr. 244, 246.)

### 1.   *The Treating Physician Rule*

In reaching his conclusion regarding Moore's RFC, the ALJ adequately applied the treating physician rule, which "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see also 20 C.F.R. § 416.927(d)(2). If a treating source is not given controlling weight, "the Commissioner must give 'good reasons in his notice of determination or decision for the weight he gives [the claimant's] treating source's opinion.'" Botta v. Barnhart, 475 F. Supp. 2d 174, 187 (E.D.N.Y. 2007) (quoting Clark v. Comm'r of Social Security, 143 F.3d 115, 118 (2d Cir. 1998)). Failure to give good reasons is often a grounds for remand. Botta, 475 F. Supp. 2d at 187 (citing Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998)); see also Rodriguez v. Barnhart, 2004 WL 2997876, at *9 (S.D.N.Y. 2004) ("The failure to follow the procedure set forth in the regulations constitutes legal error and is grounds for a remand."). The ALJ is directed to consider the "[l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence  . . . , particularly medical signs and laboratory findings, supporting the

8

opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008); see 20 C.F.R. § 416.927(d).

Here, the ALJ observed that Moore had been treated by Dr. Mehta, a board certified surgeon, since May 2005. (Tr. 16.) During the initial evaluation, Moore complained of neck pain radiating into her arms and back pain radiating into her left lower extremity. Dr. Mehta reported that Moore walked with a slight limp, that standing on her left toes and heel was painful, and that she was unable to squat more than halfway. (Tr. 141.) Upon examination, Dr. Mehta reported restricted ranges of motion in her cervical and lumbar spines, and straight leg raising of 70/90 on the left and 60/90 on the right. (Tr. 141-42.) Dr. Mehta diagnosed cervical radiculopathy, mid back sprain/strain and lumbar radiculopathy. (Tr. 142.) He prescribed a heating pad and liniments, and referred Moore to physical therapy. (Tr. 143.)

In his October 2005 medical report for the New York State Office of Temporary and Disability Assistance, Dr. Mehta stated that he had been treating Moore approximately once a month for mid-back sprain and radiculopathy. He noted that he had prescribed H.P. liniments, physical therapy, over-the-counter medications, and Lidoderm patches. (Tr. 130.) He reported her motor strength at 4/5 in the left upper and lower extremities and right upper extremity, and at 5/5 in the right lower extremity. (Tr. 134.) He stated that he had not tested Moore's tandem walk, toe-toe walk, or heel-heel walk, but that she could arise from a squatting position. (Tr. 134.) Dr. Mehta reported normal grip strength, rapid alternative movements, and fine manipulation. Pinprick sensation was abnormal only in the left lower extremity. (Tr. 135.) He concluded that Moore could occasionally lift up to 10 pounds, could stand and/or walk less than 2 hours per day, and could sit

less than 6 hours per day. (Tr. 137.) Dr. Mehta repeated these same findings in December 2006, though he noted there were no longer any gait abnormalities. (Tr. 201.)

After his initial evaluation, and as part of Moore's worker's compensation claim, Dr. Mehta concluded that Moore had a "temporary total disability." (Tr. 142-43.) On August 24, 2006, Dr. Mehta submitted a brief form to the state public assistance program, and checked the box for "Unable to work for at least 12 months." (Tr. 226-27.) A similar form dated September 6, 2007 reiterates this finding and states, "She has permanent disability." (Tr. 232.)

After thoroughly reviewing all the treatment documentation submitted by Dr. Mehta, and analyzing it in light of the record as a whole, the ALJ expressly "decline[d] to accord the opinion of Dr. Mehta much weight, as it is inconsistent not only with those other medical opinions of record, but with the MRI and EMG findings as well." (Tr. 18.) The ALJ noted that Dr. Wagman had testified that Moore was capable of doing light exertion, and that all three consultative examiners had reported findings consistent with that conclusion. The ALJ observed that "the clinical and objective signs documented throughout the record are few," taking note of the minimal MRI, nerve conduction, and EMG findings. The ALJ also found that "the claimant improved after having attended physical therapy," citing to Physical Therapist LoMongo's progress records and his March 2006 findings that Moore had a normal cervical range of motion and was herself reporting an improved condition. (Id.)

As the Second Circuit has explained:

> When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given. . . . A treating physician's statement that the claimant is disabled cannot itself be determinative.

Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The Court thus concludes that the ALJ did not err in declining to afford controlling weight to Dr. Mehta's assessments.

10

Moreover, it is worth observing that the SSA Disability Analyst attempted to solicit further explanation from Dr. Mehta as to why he believed that Moore was limited in her ability to perform work-related activities. (Tr. 176.) Dr. Mehta returned the letter with a handwritten note at the bottom, which stated that besides Moore's subjective complaints, he had no objective findings to report. (Id.) While not discussed by the ALJ, this letter reflects that the agency made adequate attempts to develop the record, and it further supports a finding that Dr. Mehta's conclusions did not demand controlling weight.

### 2.     Moore's Subjective Complaints and Credibility

The ALJ also adequately considered Moore's subjective complaints of pain. Section 416.929(c)(3) of Title 20 of the C.F.R., as interpreted in SSR 96-7p, requires an ALJ to follow a two-step process to evaluate a plaintiff's testimony regarding her symptoms. First, "the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the individual's . . . symptoms." SSR 96-7p, 1996 WL 374186 at *2. Second, "the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. Whenever the claimant's statements regarding the intensity, persistence and limiting effects of her symptoms are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id. In making this determination, the ALJ should consider, in addition to the objective medical evidence: "(1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to

11

alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . .; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." Id. at *2-3.

In her Function Report, completed in October 2005, Moore reported difficulty walking many blocks, climbing stairs, lifting objects, doing housework, running and sleeping. (Tr. 108.) Moore testified at the hearing that she experiences pain every day in her back, neck, jaw, leg and arms. (Tr. 239.) She claimed that she could only walk two blocks before needing to rest, and that she could stand and walk in combination for only 5-10 minutes. (Tr. 240.) She also stated that she could not sit for very long, and only with a pillow to support her back. (Tr. 241.) She testified that her daughter does all the housework and prepares her meals. (Id.)

The hearing transcript indicates that in response to the ALJ's targeted questioning, Moore made mostly generalized assertions of her symptoms, insisting "I do nothing all day but be in pain" (tr. 242) and "I'm in pain when I'm sitting. I'm in pain when I'm standing. I'm in pain when I'm lifting. I'm in pain. Pain." (Tr. 247.) She chastised Dr. Wagman for his conclusion that she could perform light work, but when the ALJ asked her to explain why she felt she could do no work at all, she stated only, "I'm in pain all day long. I'm in pain. Pain." (Tr. 247.)

In his opinion, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 16.) The ALJ noted that while the claimant's subjective complaints indicated "she is all but bedridden," the medical evidence did not support that assertion. (Tr. 15-16.) After

12

thoroughly analyzing the medical evidence and treatment records described above, the ALJ concluded that the "findings are not consistent with one who is in constant pain and unable to engage in any level of exertion." (Tr. 17.)

The Court believes that the ALJ's opinion reflects adequate consideration of all the applicable factors, and that there is substantial evidence in the record to support his conclusion that Moore's statements about her level of pain were not credible. Virtually none of the medical evidence can be read to indicate pain rising to the level of debilitation that Moore described at the hearing, and there was adequate evidence to support the ALJ's finding that Moore's condition steadily improved after she began physical therapy in May 2005. (Tr. 17.)

### C.     The ALJ's Disability Finding

In concluding Step Four of the analysis, the ALJ determined that because Moore was limited to light exertion, she was unable to perform her past work as a home health aide, which, according to Moore, had required standing and walking all day and lifting up to 100 pounds. (Tr. 101.) At Step Five, the ALJ looked to the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 19.) Because Moore was an individual "approaching advanced age" with a high school education at the time of her application, the ALJ found that Medical-Vocational Rule 202.14 directed a finding of "not disabled." (Id.) The Court finds that the ALJ did not err in applying these steps of the analysis.

As a final note, the Court observes that an unfortunately long period of time passed between the Commissioner's final decision and the filing of the administrative transcript with this Court. Moore is reminded that if she feels her condition has significantly worsened since the ALJ's decision, she may file a new application for SSI benefits with the agency. See 20 C.F.R. § 416.330(b) ("If you first meet all the requirements for eligibility after the period for which your

application was in effect, you must file a new application for benefits. In this case, we can pay you benefits only from the first day of the month following the month that you meet all the requirements based on the new application."); Camacho v. Commissioner of Social Security, 2005 WL 3333468, at *4 (E.D.N.Y. 2005) (noting that the claimant "is, of course, free to reapply for benefits based on conditions that have developed or worsened since the ALJ rendered his decision").

**IV.     Conclusion**

As the Court finds that the ALJ adequately applied the five-step process and that his opinion is supported by substantial evidence, the defendant's motion for judgment on the pleadings is granted and ALJ Vecchio's decision is affirmed.  The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       November ℈ , 2011

/Signed by Chief Judge Carol B. Amon/

Carol Bagley Amon
Chief United States District Judge

14